## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

H.M., a minor by and through                     CASE NO.: 1:14-cv-64
her guardian and next of friends,
M.M. and A.M., et al.,                           Judge Michael R. Barrett

        Plaintiffs,

    v.

BOARD OF EDUCATION OF
THE KINGS LOCAL SCHOOL
DISTRICT, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant Amanda R. Kitcho's Rule 12(c) Motion for

Judgment on the Pleadings (Doc. 18), Plaintiffs' response and amended response in opposition

(Docs. 20, 26), and Defendant's reply to both the response and amended response (Docs. 24,

28).[1]

## I.   GENERAL OVERVIEW

The facts, as alleged in the First Amended Complaint (Doc. 14) and construed in favor of

Plaintiffs, are as follows.

Plaintiffs are five multi-handicapped children and their parents and guardians.  (Doc. 14,

PageId 214).  The five children were students in Defendant's classroom during the 2010-2011

school year at Columbia Elementary School, a school operated by the Board of Education of the

Kings Local School District.  (Id., PageId 220).

---

[1] Plaintiffs also have filed notices of supplemental authority (Docs. 30, 31, 38).  Defendant has filed
responses (Docs. 32, 39).  Plaintiff also filed an additional response in support of Document 31

Plaintiff H.M. has the physical condition of CDG la (Cogential Disorders of Glycoslation), as well as the physical condition of cerebellar hypoplasia, which is characterized by symptoms of reduced muscle tone, poor fine motor skills and intellectual disability.  (Id., PageId 218-19).  H.M. uses a Rifton walker and ankle-foot orthotic for mobility as well as a Rifton Compass Chair for bodily support.  (Id., PageId 219).  The Rifton Compass Chair contains features such as a seatbelt that compensates for her insufficient muscular development, and without the assistance of the Rifton Compass Chair, H.M. would fall to the floor.  (Id.).  H.M. also has rolling eye seizures and stroke-like symptoms, and due to her limited muscle tone has to promptly use the toilet when necessary.  (Id.).  While H.M. initially was placed in a regular classroom in the 2010-2011 school year, she eventually was moved to Defendant's multi-handicapped classroom.  (Id.).  She remained in Defendant's classroom from November 2010 through May 2011.  (Id.).

While H.M. generally was "good as gold" in the classroom, her behavior changed when Defendant was in the classroom.  (Id., PageId 221).  Defendant often screamed at H.M. and told H.M. she "hated" her.  (Id.).  Defendant also forced H.M. to crawl to the bathroom, despite her known medical need to use her Rifton Walker at all times, where Defendant secluded H.M. and continued to scream at her.  (Id.).  Defendant indicated that: "I'm not putting her in that damn thing every time she's got to move from center to center. She can crawl."  (Id.).  Defendant also forced H.M. to crawl into the bathroom in the hallway outside the classroom, walled H.M. off from the classroom to isolate her, provoked H.M. into escalating behaviors, threatened to take her possessions, and deprived her of rewards.  (Id.).  On one occasion, Defendant allowed H.M. to attend the library without an aide, which resulted in H.M. falling and hitting her head.  (Id., PageId 222).  Defendant also frequently put H.M. in her seatbelted Rifton Compass Chair, placed

her in the bathroom, closed the door, and left her there for "periods of time for punitive reasons unrelated to any possible pedagogical purpose." (Id.). H.M. would cry and scream for prolonged periods of time. (Id.). When H.M. learned how to unbuckle her seatbelt and crawl to the bathroom door to try to get back into the classroom, Defendant would stand in front of the door and prevent her from exiting. (Id., PageId 223). One day, Defendant put duct tape on the seatbelt of the Rifton Compass Chair to make it impossible for H.M. to break free, slid H.M. into the bathroom, and left her in the chair for a significant period of time while she was crying and screaming. (Id., PageId 223). H.M. also screamed that she had to go to the restroom. (Id.). Defendant yelled back at H.M.: "I hate you. I hate you." (Id.). Other alleged conduct toward H.M. included physically restraining H.M. by learning across her and pushing her down for no reason. (Id., PageId 228). Defendant misrepresented her actions to H.M.'s parents. (Id., PageId 222).

With respect to S.P., M.J., D.A., and J.K., Defendant also is alleged to have physically and/or emotionally abused them without a pedagogical purpose. (Id) Some conduct included startling them into escalating behaviors, throwing possessions into the trash, walling them off behind dividers, depriving them of snacks, taking food from their lunches, and otherwise ignoring them. (Id., PageId 221). Other conduct of Defendant included intentionally knocking a table into the mouth of a student, pushing a student during a camp outing, and pushing another student at school in front of other children. (Id., PageId 226).

S.P. is a child with Down Syndrome, severe childhood apraxia of speech, severe receptive and expressive language disorders, and other delays. (Id., PageId 225). The alleged exemplary conduct of Defendant towards S.P. that is known to Plaintiffs included Defendant

yelling at S.P., taking S.P.'s snacks, and making S.P. stand in front of the class for extended periods of time until S.P. would perform a task to Defendant's liking.  (Id.).

M.J. has cerebral palsy, and significant challenges with respect to cognition, communication, fine and gross motor skills, adaptive needs, and other delays.  (Id.).  The alleged exemplary conduct of Defendant towards M.J. that is known to Plaintiffs included Defendant physically turning M.J. around for no reason and ridiculing M.J.'s attire.  (Id.).

D.A. has multiple disabilities that present challenges in the areas of communication, fine and gross motor skills, adaptive skills, and other delays.  (Id.).  The alleged exemplary conduct of Defendant towards D.A. that is known to Plaintiffs included Defendant often yelling at D.A. and taking his snacks. (Id.).

J.K. has cerebral palsy, a seizure disorder, and various developmental delays.  (Id.). Defendant also physically and/or emotionally abused S.P. without a pedagogical purpose.  (Id., PageId 226).  The alleged exemplary conduct of Defendant towards J.K. that is known to Plaintiffs included Defendant neglecting J.K.'s toileting needs and sending her home dirty, and allowing J.K. to sit in her own vomit during seizures while she ignored J.K.  (Id.).

All of the children are alleged to have displayed severe regressive behaviors while in Defendant's classroom.  (Id., PageId 226-27).  The children's parents and guardians contend they were not informed of Defendant's conduct while it was ongoing, even though multiple individuals were aware of the conduct.  (Id., PageId 228-30).   One teacher's aide who persistently reported Defendant's conduct to the principals eventually resigned her position and told the then-principal at Columbia, Defendant Detmer-Bogaert: "I no longer want to feel ashamed that I went to work and watched kids being mistreated.  My lead teacher [Kitcho] goes against everything that we learn each summer at our aide training and lacks all the qualities that

are found in a decent and caring teacher." (Id, PageId 228). It was not until several school employees expressed their concerns about Defendant's conduct to administration, an investigation occurred, Defendant was terminated, and additional measures to obtain information were taken by a citizen activist that the parents and guardians obtained some information about Defendant's alleged conduct. (Id., PageId 228-35).

Plaintiffs filed this lawsuit on January 20, 2014. (Doc. 1). On April 11, 2014, Plaintiffs filed their Amended Complaint. (Doc. 14). In the Amended Complaint, Plaintiffs assert the following claims against Defendant: (1) Count One: Violation of H.M.'s Fourth Amendment Right (Unreasonable Seizure); (2) Count Two: Violation of H.M.'s Fourth Amendment Right (Excessive Force); (3) Count Three: Violation of Plaintiff-Children's Fourteenth Amendment Right (Substantive Due Process); (4) Count Four: Violation of Fourteenth Amendment Right (Equal Protection); (5) Count Seven: Intentional Infliction of Emotional Distress; (6) Count Eight: Assault; (7) Count Nine: Battery; and (8) Count Eleven: Loss of Consortium.

## II.  STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed using the same standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Nonetheless, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## III. ANALYSIS

Defendant asserts dismissal of the various claims is appropriate for multiple reasons. Those claims and the pertinent arguments are addressed below.

### A. Claims under 42 U.S.C. § 1983

To state a viable § 1983 claim, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the Federal Constitution or laws of the United States, and (2) the deprivation was caused by a person while acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

#### 1. H.M.'s Unlawful Seizure, Excessive Force, and Substantive Due Process Claims

Pursuant to 42 U.S.C. § 1983, H.M. bring claims against Defendant for (1) unreasonable seizure of H.M. in violation of the Fourth Amendment; (2) excessive force against H.M. in violation of the Fourth Amendment; and (3) violation of H.M.'s substantive due process rights under the Fourteenth Amendment. The parties raise various issues concerning these claims, which are addressed below.

### i. Viability of Excessive Force and Unlawful Seizure Claims Separate from the Substantive Due Process Claims

Defendant asserts that neither of H.M.'s Fourth Amendment claims (excessive force or unreasonable seizure) is separately viable because both are subject instead to the substantive due process "shocks-the-conscience" analysis.  The Court agrees that the Fourth Amendment excessive force claim is subject to the "shocks-the-conscience" analysis, but concludes that the Fourth Amendment unlawful seizure claim may be maintained as a separate claim at this time.

Substantive due process involves the "right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).  Courts generally have recognized two types of substantive due process claims:  (1) the deprivation of a particular constitutional guarantee; and (2) actions that "shock the conscience." *Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997).  Where governmental action does not fall within one of these two categories, that action "survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Id.*  But where a specific constitutional amendment provides explicit protection against a particular type of governmental behavior, that amendment, and not the more generalized notion of substantive due process, should be used to analyze the claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998); *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999).

Where claims for excessive force have been asserted by public school students against a teacher, the Sixth Circuit, consistent with other circuit courts, has applied the shocks-the-conscience standard to determine whether liability should exist. *Nolan v. Memphis City Sch.*, 589 F.3d 257, 269 (6th Cir. 2009) (applying the shocks-the-conscience standard to § 1983 claims premised on allegations of physical abuse of a student by a teacher); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996) (applying the shocks-the-conscience standard even though "the record fail[ed] to reflect any legitimate disciplinary purpose occasioning the slap to" a student); *see also C.N. v. Willmar Pub. Sch.*, 591 F.3d 624, 634 (8th Cir. 2010) ("This circuit has generally analyzed claims alleging excessive force by public school officials under the rubric of substantive due process, however, and not the Fourth Amendment."). Accordingly, Plaintiff's Fourth Amendment excessive force claim in Count One must be dismissed as a separate claim because it is more appropriately analyzed under the substantive due process claim in Count Three using the "shocks-the-conscience" standard.

An unlawful seizure claim, however, is distinct from an excessive force claim, particularly where the seizure does not involve the sort of physical abuse inherent in an excessive force claim. *See Hoskins v. Cumberland Cnty. Bd. of Educ.*, No. 2:13-cv-15, 2014 U.S. Dist. LEXIS 174073, at *21 (MD. Tenn. Dec. 17, 2014) (citing *Humphrey v. Mabry*, 482 F.3d 840, 848-51 (6th Cir. 2007)) ("Unlawful seizure and excessive force are distinct claims."). While the Sixth Circuit has been reluctant to apply the substantive due process shocks-the-conscience standard to a claim that did not concern physical abuse and where the plaintiff had presented evidence as to an illegal seizure within the meaning of the Fourth Amendment, *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir. 1991) (citing *Braley v. City of Pontiac*, 906 F.2d 220, 226

8

(6th Cir. 1990)),[2] it also has recognized that it has "consistently relied upon [the shocks-the-conscience] standard in a variety of contexts[,]" *Lillard*, 76 F3d at 725 (citing *Braley v. City of Pontiac*, 906 F.2d 220, 226 (6th Cir. 1990)).[3]  Some courts outside this circuit have analyzed unlawful seizure claims in this particular context under the Fourth Amendment standard rather than under the substantive due process standard.  *See, e.g.*, *C.N.*, 591 F.3d at 633 (considering claim against special education teacher for unreasonable seizure by seizing, secluding, restraining and confining of student under the Fourth Amendment); *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1250-52 (10th Cir. 2008) (analyzing claim concerning placement of student in a timeout room as one for unlawful seizure under the Fourth Amendment); *Rasmus v. Arizona*, 939 F. Supp. 709, 713 (D. Ariz. 1996) (analyzing claim that emotionally handicapped student was secluded improperly in a locked timeout closet under the Fourth Amendment).  Given that the Fourth Amendment's protections extend to actions by school officials, *New Jersey v. T. L. O.*, 469 U.S. 325, 334 (1985), the utilization of the Fourth Amendment analysis for an unreasonable seizure claim not involving the type of physical abuse inherent in an excessive force claim may be appropriate and the Fourth Amendment claim for unreasonable seizure therefore should not be dismissed.[4]  Nonetheless, regardless of which standard is applied to the unreasonable seizure claim, the Court finds, as explained *infra*, that Plaintiff has stated a plausible claim for relief.

### ii.     Pleading of the Substantive Due Process Claim

---

[2] *See also Pearson v. Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) ("This court has recently expressed the view that applying the 'shock the conscience' test in an area other than excessive force is problematic.") (citing *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir. 1991)) (internal quotation marks omitted).

[3] The *Lilliard* court suggested that a claim for unreasonable search and seizure under the Fourth Amendment may be maintained under the substantive due process clause but did not decide that it was subject to the "shocks-the-conscience" rather than the Fourth Amendment reasonableness standard.  *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (citing *Wilson v. Beebe*, 770 F.2d 578, 585-86 (6th Cir. 1985) (en banc); *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990)).

[4] The Tenth Circuit has acknowledged that there is not a clear consensus as to whether the Fourth Amendment should apply in the case of some types of school discipline. *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 791 (10th Cir. 2013).

Defendant argues that H.M. has failed to sufficiently plead a claim under the substantive due process standard.

The Supreme Court has held that different "conscience-shocking" standards should be applied depending on the factual circumstances under which the governmental action took place. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)).

> More specifically, in situations where the implicated government actors "are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . ., their actions will be deemed conscience-shocking if they were taken with 'deliberate indifference' towards the plaintiff's federally protected rights.  In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . ., public servants' reflexive actions 'shock the conscience' only if they involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'"

*Darrah*, 255 F.3d at 306 (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*)); *see also Shreve v. Franklin County, Ohio*, 743 F.3d 126, 133-34 (6th Cir. 2014) (relying on *Darrah*, and recognizing that "an excessive-force claim under the Fourteenth Amendment operates on a sliding scale").  It has further recognized that it is difficult to determine where conscious-shocking behavior resides on the continuum of conduct:

> The bookends present the easier cases.  Merely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is "intended to injure" without any justifiable government interest, most clearly rises to the "conscience-shocking" level.  [*County of Sacramento,* 523 U.S. at 848-49].  Conduct that is more akin to recklessness or gross recklessness, such as deliberate indifference, is a "matter for closer calls." *Id.* at 849.  These middle states of culpability "may or may not be shocking depending on the context." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008).

*Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014).

10

The substantive due process inquiry that has been used in school corporal punishment cases is whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a mere careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) (internal quotation marks omitted).  But not every violation of state tort and criminal assault laws will be a violation of this constitutional right.  *Id.*

With respect to the excessive force claim asserted by H.M. as analyzed under the substantive due process standard, it is based upon Defendant's alleged restraining of H.M. by taping her into a chair.  (Doc. 14, PageId 240).  Specifically, she alleges that Defendant regularly placed H.M. into the bathroom where H.M. would unbuckle her seatbelt and try to open the door and go back into the classroom, and that one day, tiring of H.M.'s conduct, Defendant "used duct tape to rig the seatbelt on [H.M.'s] Rifton Compass Chair to make it impossible for H.M. to break free [and] then slid H.M. into the bathroom in the classroom, and left her in the chair, crying and screaming for a significant period of time."  (Doc. 14, PageId 224).  The specific force is not considered in isolation, however.  Plaintiff alleges that the action of Defendant was gratuitous and unjustified punitive physical violence that had no relationship to any legitimate education or other objective.  (Doc. 14, PageId 215).  In the absence of a pedagogical purpose behind an act, it is more likely that a jury could find the need to employ the various tactics "was so minimal or non-existent that the alleged [abuse] w[as] a brutal and inhumane abuse of [her] official power, literally shocking to the conscience." *Webb*, 828 F.2d at 1159. *See also Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (assuming based upon a construction of the facts favorable to the plaintiff that a jury could find a constitutional violation

because merely for forgetting "to bring a pencil to class, [a teacher] grabbed [a student] and slammed her head against the blackboard [and] . . . then threw her on the ground and choked her for approximately one minute. As a result, [the student] suffered petechia and contusions on her neck. Later, [the student] also exhibited symptoms consistent with post-traumatic stress disorder."). Further, Plaintiff has alleged facts to show she is multi-handicapped. The fact that a plaintiff has a disability may bear on whether the amount of force amounts to a due process violation. *Domingo v. Kowalski*, No. 3:13-cv-94, 2014 U.S. Dist. LEXIS 121422, at *34 (N.D. Ohio Aug. 29, 2014) (recognizing that the fact that the plaintiff-children "were developmentally-disabled bears on whether the amount of force [the teacher] used amounts to a substantive due process violation"); *see also Hatfield v. O'Neill*, 534 F. App'x 838, 847 (11th Cir. 2013) (recognizing that "'the conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless") (quoting *M.S. v. Seminole County School Bd.*, 636 F. Supp. 2d 1317, 1323 (MD. Fla. 2009)); *G.C. v. Sch. Bd. of Seminole Cnty.*, 639 F. Supp. 2d 1295, 1305 (M.D. Fla. 2009) (same as *Hatfield*).

Although recognizing that Plaintiff's allegations of physical injury resulting from the restraint are not fully developed, she has alleged bruising (Doc. 14, PageId 236) and the facts alleged satisfy the notice pleading standard and make it at least plausible that a physical injury was sustained as a result of the incident. Further, while courts that have permitted substantive due process claims to proceed to trial customarily require the student to sustain dramatic physical injuries, the parties have directed the Court to no caselaw indicating that psychological injury standing alone or with minimal physical injury can never pass the constitutional threshold. *Ross v. Lamberson*, 873 F. Supp. 2d 817, 820 (W.D. Ky. 2012) (collecting cases); *Minnis v. Sumner County Board of Education*, 804 F. Supp. 2d 641, 649 (M.D. Tenn. 2011); *see also T. W. v. Sch.*

12

*Bd.*., 610 F.3d 588, 601-602 (11th Cir. 2010) ("It is clear '[p]laintiffs have not fared well where psychological damage forms either the sole basis of or is an element of the plaintiff's substantive due process claim, . . . but we can imagine a case where an exercise of corporal punishment—even one that causes only psychological injury—might be so severe that it would amount to torture equal to or greater than the stomach pumping abuse condemned in *Rochin*[.]") (internal citations and quotation marks omitted); *Nolan*, 589 F.3d at 269-70 (affirming denial of motion for new trial on Section 1983 claim, noting plaintiffs "failed to produce medical evidence that any physical injury resulted from the paddlings" and only "scant evidence of significant psychological injury stemming from the paddling").  While Plaintiff has a high burden to satisfy, the Court finds that the determination as to whether the alleged use of force was arbitrary and shocking to the conscience is context-specific and therefore is one better made after the record has been fully developed.  Indeed, the cases to which the parties refer the Court primarily have been decided on summary judgment rather than a motion to dismiss.  *See T.W.*, 610 F.3d at 600-03; *Minnis v. Sumner Cnty. Bd. of Educ.*, 804 F. Supp. 2d 641 (M.D. Tenn. 2011); *Ross v. Lamberson*, 873 F. Supp. 2d 817, 820 (W.D. Ky. 2012); *see also Shinn v. Detroit Public Schs.*, 2011 U.S. Dist. LEXIS 10140, at **20-22 (E.D. Mich. 2011) (denying summary judgment on qualified immunity grounds when, after telling an epileptic student "I never liked you anyways," a teacher either shoved the student to the ground or released her hold on the student, causing the student to fall, hit a chair and then the ground, triggering a seizure); *Jackson v. Sumner Cnty. Bd. of Educ.*, No. 3:09-cv-1005, 2011 U.S. Dist. LEXIS 2806, at **14-15 (M.D. Tenn. Jan. 6, 2011) (granting summary judgment for defendant, noting a teacher "shoved [the student] against a bookshelf, squeezed his face painfully tightly on at least one occasion, forcefully 'slammed' him into a chair, and 'yanked' him away from the drinking fountain," acts that "while potentially

abusive, did not cause severe physical harm[,]" were not malicious, and thus "do not shock the conscience").

Aside from excessive force, H.M. also asserts a claim for the right to be free from bodily restraint and unreasonable seizure based upon taping H.M. into a chair and by secluding her in the bathroom and the janitor's hallway on multiple occasions.  (Doc. 14, PageId 240).  She alleges that the seclusion lasted for a significant period of time, and that on at least one occasion, H.M. indicated she had to use the restroom while isolated.  Even if the claim should be analyzed under the substantive due process standard, the right is conceptually different from the right to be free from excessive force.  While the behavior requires a context-specific analysis, it is plausible that the teacher was afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action such that her actions may be deemed conscience-shocking if they were taken with "deliberate indifference" towards H.M.'s federally protected rights.  Plaintiff's allegations as to the conduct and lack of pedagogical purpose are sufficient to survive a motion to dismiss.  Further, a district court in this circuit has specifically addressed the issue of isolation, stating that "placing school children in isolation for an entire school day without access to lunch or a toilet facility shocks the conscience" and that in "the few cases where isolation of school children has been utilized either as a form of punishment or a form of 'teaching', the courts have found the practice to be unconstitutional."  *Orange v. County of Grundy*, 950 F. Supp. 1365, 1373 (E.D. Tenn. 1996); *see also Rasmus*, 939 F. Supp. at 716 (denying summary judgment under the less burdensome Fourth Amendment standard where a reasonable factfinder could conclude the placement of a special needs student in a locked time out room was excessively intrusive in light of his age and emotional disability).  H.M.'s allegations are sufficient to suggest a plausible claim for relief, and the Court cannot conclusively determine whether the conduct

could be conscience shocking and so arbitrary to violate Plaintiff's right to substantive due process until the record is fully developed.

Finally, with respect to H.M.'s claim directed to other acts of Defendant that allegedly constitute substantive due process violations, the Court finds the allegations sufficient to plausibly state a claim for relief.  As with the above claims, H.M. has alleged that she was multi-handicapped and Defendant's actions lacked any pedagogical purpose.  The right to personal security and bodily integrity are protected by the Fourteenth Amendment.  H.M. has alleged Defendant purportedly violated that right by forcing her to crawl to places and denying her use of her walker even though she was required to use her walker at all times for medical reasons, isolated her from the classrooms, and ignored her bodily needs, which plausibly may rise to the level of conscience shocking, depending on the context.  Further, the allegations plausibly suggest that Defendant was afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action such that her actions may be deemed conscience-shocking if they were taken with 'deliberate indifference' towards H.M.'s federally protected rights.   While again the burden on the plaintiff is a heavy one, the ultimate determination as to whether the conduct was conscience shocking is not properly made at this early stage.

### iii.    Pleading of the Unlawful Seizure Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. Amend. IV.  The Fourth Amendment is now understood to apply within the school setting.  *See New Jersey v. T. L. O.*, 469 U.S. 325, 336-37 (1985).

The first question to consider is whether there was a "seizure" under the Fourth Amendment.  A seizure generally occurs when, in view of all the surrounding circumstances, "a

reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); *see also United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006). In a school setting, the Fourth Amendment must be viewed differently. As one circuit court has explained:

> We must think about seizures differently in the school context, as students are generally not at liberty to leave the school building when they wish. *See* [*Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995)] ("[U]nemancipated minors lack some of the most fundamental rights of self[-]determination--including even the right to come and go at will."); *Wallace v. Batavia School Dist.*, 101, 68 F.3d 1010, 1013 (7th Cir. 1995) ("[L]aw compels students to attend school, which deprives them of a level of freedom of mobility. Once under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators."). To qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance.

*Couture*, 535 F.3d at 1250-51.

Here, the claim of H.M. is based on the alleged actions of Defendant restraining her by physically taping her into the chair, forcing her crawl on the floor, and by secluding her in the bathroom and "janitor's hallway" on multiple occasions without any pedagogical purpose. These allegations are sufficient to satisfy the burden of showing a plausible seizure exceeding that inherent in compulsory attendance.

The next questions are whether that seizure was justified at its inception and whether the seizure was permissible in scope. *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989); *see also Couture*, 535 F.3d at 1250. A seizure is "permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure] and not excessive[] . . . in light of the age and sex of the student and the nature of the infraction." *New Jersey v. T.L.O.,* 469 U.S. 325, 342, 1 (1985). Here, the allegations as to the lack of pedagogical purpose, H.M.'s multiple handicaps, the purported length of the seizures, and the continued use of the seclusion and isolation make it

plausible that the purported seizure was not justified at its inception and was not reasonable in scope. As such, the Fourth Amendment unreasonable seizure claim should not be dismissed at this early stage.

### 2. Substantive Due Process Claims of All Other Plaintiff-Children

The Amended Complaint raises a substantive due process claim in Count Three on behalf of the Plaintiff-children S.P., M.J., D.A., and J.K. Their claims are subject to the "shocks-the-conscience" standard articulated *supra*. *See Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). Again, there are different standards that should be applied to determine whether particular conduct shocks the conscience, which depend on the factual circumstances under which the governmental action took place. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)).

Here, the allegations taken in their totality are sufficient at this time to state a plausible claim for relief under the circumstances. Plaintiffs have alleged that Defendant physically and/or emotionally abused them and that such conduct was undertaken intentionally and without a pedagogical purpose. Construing those allegations in favor of Plaintiffs, it is plausible that such behavior could be found to shock the conscience. *Webb*, 828 F.2d at 1159; *see also Hatfield*, 534 F. App'x at 847. Further, Plaintiffs have alleged specific exemplary instances of conduct of which they are presently aware were directed by Defendant to each of the Plaintiff-children, as well as to other children in the classroom, including but not limited to physically taking away food and snacks, incessant screaming, ridiculing, taunting to the point of escalating behaviors, isolation and seclusion, physically requiring a student to stand for a long period of time, and other deliberate acts of depriving the children of or ignoring their basic needs. While some of the specific conduct pled may appear more severe at this time than others, the Court construes

17

the allegations broadly and in the light most favorable to Plaintiffs. In doing so, the Court finds that Plaintiffs have met their burden of notice pleading consistent with their burden under *Twombly* of pleading enough facts to state a claim to relief that is plausible and above a speculative level.[5] In addition, the extent of physical injuries are not entirely clear at this stage, but the parties have directed the Court to no caselaw indicating that psychological injury alone or in combination with minimal physical injury can never pass the constitutional threshold. *See Ross*, 873 F. Supp. 2d at 820; *Minnis*, 804 F. Supp. 2d at 649. Given that the determination as to the level of arbitrariness and whether the behavior is conscious shocking is context specific, that determination, as explained *supra*, is better reserved for a later stage of this action.

### 3.  **All Plaintiff-Children's Equal Protection Claims**

All Plaintiffs assert a claim against Defendant for violations of the Equal Protection Clause. Defendant argues that the claim should be dismissed for lack of plausibility because there are no factual allegations asserting that Defendant, as a teacher of multi-handicapped students, treated Plaintiff-children or their parents and guardians differently from others similarly situated.

The Equal Protection Clause prohibits states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one differently than others similarly situated without any rational basis for the difference. *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014) (citing *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010)). Yet, the Equal Protection Clause does not forbid classifications. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008). Rather, it prohibits differential treatment of

---

[5] While verbal threats and name calling may be insufficient grounds for relief under § 1983, *see Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985), Plaintiffs' allegations plausibly show that Defendant's conduct went beyond verbal threats and name calling to include the physical isolation, deprivation and/or neglect of basic needs, and potentially other physical abuse of these special needs children.

persons who are in all relevant respects alike.  *Id.* (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  "Disabled persons are not a suspect class for purpose of an equal protection challenge." *Id.*  "A state may therefore treat disabled students differently, so long as its actions are rationally related to some legitimate governmental purpose."  *Id.* (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-68 (2001)).

Construing Plaintiffs' allegations in the light most favorable to them and accepting all reasonable inferences therefrom in their favor, they state a plausible claim for violation of the Equal Protection Clause against Defendant.  As set forth *supra*, Plaintiffs have alleged that Defendant's conduct towards the children, including but not limited to isolating/secluding them, startling them into escalating behaviors, physically moving them against their will, and depriving them of and/or ignoring basic needs, lacked any pedagogical purpose.  They further allege that Defendant provided false information to the children's parents and guardians about the children's behavior and classroom experiences.  From these facts, it is reasonable to infer from the alleged facts that the treatment was solely due to Plaintiff-children's multiple handicaps and non-disabled students were not treated in the same manner.  While the precise nature of how Defendant's treatment compared with the treatment of students without disabilities, or those students' parents and guardians, is not fully developed, Plaintiffs' pleading is sufficient to raise a right to relief above a speculative level, give fair notice to Defendant of the basis for the claim, and permit the reasonable inference that Defendant could be liable for the misconduct alleged. Accordingly, the Equal Protection claim against Defendant should not be dismissed at this early stage.

**B.  Plaintiffs' State Law Claims**

Defendant asserts that the state law claims against her should be dismissed.  Her arguments are addressed below.[6]

### 1.  <u>**Battery**</u>[7]

Defendant asserts that there are no allegations that she physical touched any of the Plaintiff-children, and that such allegations would have been set forth in the Amended Complaint.  (Doc. 18, PageId 319 f. 2).  She contends that the battery claim against her must be dismissed in the absence of any such specific allegations.  (Id.).

The Amended Complaint, however, contains allegations that Defendant physically restrained H.M. and pushed the door against H.M. to prevent H.M. from escaping the bathroom, that H.M. had bruises, that Defendant physically turned M.J. around, that Defendant "made" S.P. stand in front of a class, and that Defendant physically took snacks from the children.[8]  They further allege generally that each of the students was physically abused by Defendant.  Considering those allegations and the difficulty discerning the precise injuries and nature of the incidents at this early stage due to the children's severe disabilities, the Court finds that Plaintiffs have set forth sufficient direct and inferential allegations to plausibly allege claims for battery against Defendant.

### 2.  <u>**Intentional Infliction of Emotional Distress**</u>

---

[6] The majority of her arguments as to the state law claims are made in footnotes in her motion for judgment on the pleadings. While she argues that the negligence *per se* claim against her should be dismissed because she cannot be held liable for failing to report her own alleged conduct (Doc. 18, PageId 315 n.1), Plaintiffs do not contend that the negligence *per se* claim in Count Ten is asserted against Defendant.  Therefore, as the claim is not asserted against Defendant, the Court need not consider it here.

[7] She does not raise any argument directed specifically to the claim for assault in Count Eight of the Amended Complaint.  In any event, the allegations are plainly sufficient to plausibly state a claim for assault.

[8] The Amended Complaint also contains allegations that Defendant pushed an unidentified student and intentionally knocked a table into the mouth of an unidentified student.

Defendant contends that Plaintiffs' allegations fail to state a plausible claim for intentional infliction of emotional distress for the same reasons that the allegations fail to rise to the level of conscience shocking.  (Doc. 18, PageId 320).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious.  *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App. 3d 73, 82 (1991); *see also Yeager v. Local Union 20, Teamsters*, 6 Ohio St. 3d 369 (1983). Extreme and outrageous conduct occurs "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager*, 6 Ohio St. 3d at 375.

As Defendant's arguments are premised only on the same arguments raised as to the shocks-the-conscience standard for the § 1983 claims, the Court incorporates that factual analysis here to find that Plaintiffs have plausibly alleged claims for intentional infliction of emotional distress against Defendant.

### 3.   Loss of Consortium

Defendant argues that Plaintiffs' claims for loss of consortium are not plausible because they are derivative of their other claims, which all fail.  (Doc. 18, PageId 330).  As explained *supra*, however, this argument fails because the Court has found that Plaintiff has asserted plausible claims for relief.  The derivative loss of consortium claim therefore remains plausible.

### 4.   Supplemental Jurisdiction

Defendant asserts that the Court should decline to exercise supplemental jurisdiction in the absence of any viable federal claim. (Doc. 24, PageId 441).

When a claim is so related to the claims in the original action within such original jurisdiction that they form part of the same case or controversy, a district court has supplemental jurisdiction over the claim.  28 U.S.C. § 1367(a).  The district court may decline to exercise supplemental jurisdiction, however, under certain circumstances, including when the district court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c).

Here, the state law claims are so related to the federal constitutional claims of Plaintiffs. Given that the Court has determined *supra* that the federal claims survive dismissal, the latter reason for declining supplemental jurisdiction does not exist.  As such, the Court will continue to exercise supplemental jurisdiction over the state claims.

### C.  Immunity

Defendant argues that she is entitled to immunity from the claims asserted against her. Specifically, she claims she is entitled to qualified immunity, immunity under the Paul D. Coverdell Teacher Protection Act of 2001 ("TPA"), 20 U.S.C. 6731, *et seq.*, and immunity under Ohio Rev. Code 2744.03(A)(6).  (Doc. 18, PageId 321-24).

### 1.  Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Sixth Circuit has explained:

> To determine whether a government official is entitled to qualified immunity, we consider the two-part test described in *Saucier v. Katz*, which asks whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was clearly established."  533 U.S. 194, 200-01, 121 S.Ct.

22

2151, 150 L. Ed. 2d 272 (2001).  We are free to address the second question first, analyzing whether the constitutional right that purportedly prohibited a defendant's conduct was clearly established, without addressing whether there was a constitutional violation at all.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

*Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014) (footnote omitted).  To that end, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  Nevertheless, there need not be a prior case directly on point for a law to be clearly established; generalized statements of the law or a general constitutional rule already identified in the decisional law are sufficient.  *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010).  Although qualified immunity typically is addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss.  *Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 677 (6th Cir. 2001).

As explained *supra*, Plaintiffs have sufficiently alleged plausible constitutional violations by Defendant.  The question therefore is whether the constitutional rights at issue were clearly established.

With respect to the claims for substantive due process violations, the right to be free from excessive corporal punishment in the school setting, particularly where it is not administered for any pedagogical purpose, is clearly established.  *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987); *see also* Ohio Rev. Code § 333319.41.  More specifically, the Sixth Circuit has held that school corporal punishment may violate a substantive due process right when the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a mere careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the

23

conscience.'" *Id.* As recognized by the Supreme Court in 1998, conduct "intended to injure" without any justifiable government interest most clearly will rise to the conscience-shocking level. *County of Sacramento,* 523 U.S. at 848-49; *see also Range*, 763 F.3d at 590 (relying on *County of Sacramento*). Indeed, "[t]he unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that '[t]he easiest cases don't even arise.'" *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 377-78 (2009) (quoting *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990)). Moreover, the law is clearly established that any such conduct of a government officer must be rationally related to a legitimate state interest and that deliberate indifference to an individual's federally protected rights may be conscience shocking. *Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997); *Darrah*, 255 F.3d at 306.[9] As such, a reasonable teacher knew or should have known that actions taken with the intent to injure a special education student and without any pedagogical purpose were constitutionally impermissible, even if the specific actions in question had not previously been held unlawful. *United States v. Lanier*, 520 U.S. 259, 271 (1997).[10]

---

[9] The Tenth Circuit long ago addressed an issue concerning bodily restraint that is similar to that raised in this case. *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987). There, the parents of an eight-year-old girl sued school officials under § 1983 for allegedly tying her to a chair with a jump rope for the greater part of two days, denying her access to the bathroom and thereby causing her humiliation and mental anguish and impairment in her ability to study productively. *Id.* at 305. The circuit court affirmed the denial of qualified immunity on a motion to dismiss, stating:

> We are persuaded that in January 1985, a competent teacher knew or should have known that to tie a second-grade student to a chair for an entire school day and for a substantial portion of a second day, as an educational exercise, with no suggested justification, such as punishment or discipline, was constitutionally impermissible. A young student who is not being properly punished or disciplined has a constitutional right not to be lashed to a chair through the school day and denied, among other things, the basic liberty of access to the bathroom when needed.

*Id.*

[10] While discovery may further clarify and narrow the law that must be deemed clearly established to deny qualified immunity at a later stage of the litigation, the Court finds that the application of the law to the allegations construed in the light most favorable to Plaintiffs is clearly established.

Second, the allegations construed in the light most favorable to Plaintiffs implicate a right to be free from unlawful seizures in the school setting.  Defendant has made no argument raising the issue of qualified immunity as to the Fourth Amendment claim specifically.  In any event, at the time of the alleged conduct, it was well-established that the Fourth Amendment applied, although in a relaxed manner, to school officials in the school setting.  *T.L.O.*, 469 U.S. at 341-42; *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008) (applying Fourth Amendment to claim of school official's unlawful detainment of a student, and stating that a "school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule") (internal quotation marks omitted).[11]  Even in novel factual circumstances, "'officials can still be on notice that their conduct violates established law.'" *Safford Unified Sch. Dist. #1*, 557 U.S. at 377-78 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  The Court finds that a reasonable teacher, at a minimum, knew or should have known that actions not justified by a pedagogical purpose and not reasonably related in scope to the pedagogical purpose would be unconstitutional, even if the specific action in question had not itself been previously held unlawful.  *Lanier*, 520 U.S. at 271; *T.L.O.*, 469 U.S. at 341-42.

Third, the allegations construed in favor of Plaintiffs implicate the rights under the Equal Protection Clause.  Specifically, it implicates Plaintiffs' rights to be free from disparate treatment as multi-handicapped students without any rational relationship to a legitimate governmental purpose.  That right is clearly established in the Sixth Circuit.  *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008).

Accordingly, the grant of qualified immunity is not appropriate at this early stage.

---

[11] Other courts likewise have applied the Fourth Amendment to allegations of unlawful seizures of students. *Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003); *Wallace v. Batavia Sch. Dist. 101,* 68 F.3d 1010, 1014 (7th Cir. 1995); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079-80 (5th Cir. 1995); *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989); *Sims v. Bracken Cnty. Sch. Dist.*, No. 10-33, 2010 U.S. Dist. LEXIS 110822, at *30 (E.D. Ky. Oct. 18, 2010).

### 2. **Immunity under the TPA**

The Paul D. Coverdell Teacher Protection Act of 2001 ("TPA"), 20 U.S.C. § 6731, *et seq.*, provides immunity to a teacher under certain circumstances.  Specifically, 20 U.S.C. § 6736 provides:

> no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if—
>
> (1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;
>
> (2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;
>
> (3) if appropriate or required, the teacher was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;
>
> (4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher; and
>
> (5) the harm was not caused by the teacher operating a motor vehicle, vessel, aircraft, or other vehicle . . . .

Defendant argues that she is entitled to protection under the act for acting in the good faith performance of her duties.  At this time, however, the Court must accept the allegations as true and construe them in the light most favorable to Plaintiffs. When doing so, the Court finds that the TPA would not be applicable.  As explained *supra*, the allegations plausibly show that Defendant was not acting in furtherance of efforts to control, discipline, expel or suspend Plaintiffs or to maintain order or control in the classroom or school.  They also make it plausible that the alleged harm was caused by gross negligence, reckless misconduct, or a conscious,

26

flagrant indifference to the rights or safety of the individuals alleged to have been harmed. Accordingly, the grant of immunity under the TPA is not warranted at this time.

### 3. **Ohio Rev. Code § 2744.03(A)(6)**

Ohio Rev. Code § 2744.03(A)(6) provides protection from liability for employees of political subdivisions unless one of the following applies: "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code." "Malice" is the "willful and intentional design to injure or harm another, usually seriously, through conduct that is unlawful or unjustified." *Otero v. Wood*, 316 F. Supp. 2d 612, 629 (S.D. Ohio 2004). "Bad faith" includes a "dishonest purpose, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.* "Wanton misconduct" is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012). "Reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

Accepting Plaintiffs allegations as true and construing them in the light most favorable to Plaintiffs, the Court cannot conclude at this early stage that Ohio Rev. Code § 2744.03(A)(6) is applicable. As explained *supra*, the allegations make it plausible that Defendant's actions towards Plaintiffs lacked any pedagogical purpose and were intended to injure, or posed an obvious risk of harm to, to the children. Further, the allegations plausibly show that Defendant acted with a dishonest purpose in providing (or failing to provide) information to the children's

27

parents and guardians. Discovery is therefore necessary to determine whether § 2744.03(A)(6) may apply.

### D. Whether Federal and State Claims are Time-Barred

Plaintiffs' claims are not time barred. Under Ohio law, when a person entitled to bring an action "is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed." Ohio Rev. Code § 2305.16. "When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all." *Id.* Given that there is no indication that any of the Plaintiff-children are of the age of majority or have otherwise had their disability removed, the Court finds that their state law claims, as well as the derivative claims of the parents and guardians, are not time barred. *Fehrenbach v. O'Malley*, 113 Ohio St. 3d 18, 19 (2007) (holding that a parent's claim for loss of consortium against a third party for injuries to the parent's minor child is an interest that it "joint and inseparable" from the child's own claim, and thus, is tolled during the child's disability); *Loudin v. Mills*, No. C-990569, 2000 Ohio App. Lexis 2006, at *12-13 (Ohio Ct. App. May 12, 2000) (recognizing parents' claims for loss of consortium and reimbursement for incurred losses as derivative claims of their son's claims of sexual assault, which were thereby subject to the same statute of limitations and minority tolling as their son's claim, and characterizing their claims for negligent and intentional infliction of emotional distress as separate claims that were nevertheless tolled during the minority of their son).

With respect to the § 1983 claims, the Sixth Circuit has applied the two-year statute of limitations for bodily injury or injury to personal property found in Ohio Rev. Code § 2305.10. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir.

28

1991). Because the statute of limitations for § 1983 claims is borrowed from state law, the state's tolling provisions also are borrowed from state law, except when they are "'inconsistent with the federal policy underlying the cause of action under consideration.'" *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010) (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)). The Sixth Circuit has held that applying the Ohio tolling statute to claims arising under § 1983 is not inconsistent with statute's goal. *Id.* Accordingly, the § 1983 claims also are subject to tolling under the Ohio tolling provision and therefore are not time barred.

### E. Whether Plaintiffs Failed to Exhaust Claims

The IDEA exhaustion requirement contained in 20 U.S.C. § 1415, and the similar state statute at Ohio Admin. Code § 3301-51-05,[12] presumptively applies to Plaintiffs' § 1983 and state claims if any of those claims "allege[]injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008) (quoting *Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1048 (9th Cir. 2002)). Plaintiffs are not excused from exhaustion simply because they are seeking monetary damages. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 918 (6th Cir. 2000). Nevertheless, Plaintiffs are not required to exhaust their claims when they show that exhaustion would be futile. *Id.*

---

[12] Ohio Admin. Code § 3301-51-05 states:

> Nothing in this rule restricts or limits the rights, procedures, and remedies available under the United States Constitution, the Americans with Disabilities Act of 1990, January 1990, Title V of the Rehabilitation Act of 1973 as amended by the Rehabilitation Act Amendments of 1998, August 1998, or other federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under these laws seeking relief that is also available under Section 615 of the IDEA, the procedures under paragraphs (K)(7) and (K)(14) of this rule must be exhausted to the same extent as would be required had the action been brought under Section 615 of the IDEA**.

(emphasis added).

Here, the Court finds that Plaintiffs' claims do not relate to a free and appropriate public education and thus are not subject to exhaustion under IDEA.  The claims relate to numerous alleged acts of verbal and physical abuse by a teacher, which are alleged to be non-disciplinary and non-educational in nature.  The Sixth Circuit has recognized that allegations of physical and verbal injuries are "non-educational in nature and cannot be remedied through the administrative process."  *F. H. v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014).  "Moreover, requiring exhaustion of [Plaintiffs' § 1983] claims would create an additional administrative barrier not present for non-disabled children."  *Id.* at 644 (citing *Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 882-83 (M.D. Tenn. 2010)).

In addition, "'[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights.'"  *Id.* (citing *Covington*, 205 F.3d at 317.  Exhaustion has been found to be futile or inadequate in circumstances of alleged abuse when the injuries are wholly in the past and the teacher-child relationship no longer exists. *See Covington*, 205 F.3d at 917 (finding exhaustion would be futile where the injured child already had graduated from the special education school, his injuries were wholly in the past, and money damages were therefore the only remedy that would make him whole); *see also Domingo v. Kowalski*, No. 3:13-cv-94, 2014 U.S. Dist. LEXIS 121422, at *29-30 (N.D. Ohio Aug. 29, 2014) (finding exhaustion of IDEA administrative remedies futile when nine years had passed since the alleged abuse, the children had progressed beyond the educational stage where abuse occurred, and the alleged abuse was therefore wholly in the past).  Here, the unique circumstances also make exhaustion futile and inadequate to protect Plaintiffs' rights.  The primary allegations of abuse stem from the actions of a teacher in or around the 2010-2011 school year.  For a significant period of time, the parents and guardians of the special needs children were unaware of the alleged abuse.  Indeed, they

have been engaged in protracted disputes in an attempt to obtain the records relating to the alleged abuse.  By the time they acquired the relevant information and filed this lawsuit, the teacher at the center of the abuse allegations has long since been terminated (in or about January 2012) thereby ending the circumstances about which they would complain through the administrative process and the only issues remaining are retrospective.  Exhaustion would therefore be futile and inadequate to protect Plaintiffs' rights.

### F.  Punitive Damages

Pursuant to TPA, 20 U.S.C. § 6736, the punitive damages based on the actions of teachers may be limited.  That provision specifically provides, in pertinent part:

> Punitive damages may not be awarded against a teacher in an action brought for harm based on the act omission of a teacher acting within the scope of the teacher's employment or responsibilities to a school or governmental entity unless the claimant establishes by clear and convincing evidence that the harm was proximately caused by an act or omission of such teacher that constitutes willful or criminal misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed.

20 U.S.C. § 6736.

As explained *supra*, Plaintiffs have alleged sufficient facts to make it plausible that Defendant acted willfully or with a conscious, flagrant indifference to the rights or safety of Plaintiffs.  Further, the use of the phrase "clear and convincing evidence" in this provision of the TPA suggests that such a determination is better reserved for a later stage of litigation after discovery has been completed.

Defendant further argues that pursuant to Ohio Rev. Code § 2744.05(A), Plaintiffs cannot recover punitive damages against her because they have alleged only that she acted in her official capacity.  THe Amended Complaint, however, specifically indicates that Defendant is "being sued in both her official and individual capacities."  Further, Ohio Rev. Code § 2744.05(A) does not apply to "civil claims based upon alleged violations of the constitution or statutes of the

31

United States . . . ."  Ohio Rev. Code § 2744.09(E).  As such, Defendant's argument is not well taken.

**IV.** **CONCLUSION**

For the foregoing reasons, Defendant's Motion (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**.  Count Two of the Amended Complaint alleging excessive force against H.M. in violation of the Fourth Amendment shall be **DISMISSED** consistent with the foregoing. The case shall proceed on the claims against Defendant set forth in Counts One, Three, Four, Seven, Eight, Nine and Eleven.

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT