UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

H.M., a minor by and through                    CASE NO.: 1:14-cv-64
her guardian and next of friends,
M.M. and A.M., et al.,                          Judge Michael R. Barrett

       Plaintiffs,

     v.

BOARD OF EDUCATION OF
THE KINGS LOCAL SCHOOL
DISTRICT, et al.,

       Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss of Defendants Kings Local School District Board of Education, Jerry Gasper, and Shelley Bogaert (collectively, "Defendants"). (Doc. 17). Plaintiffs filed a response in opposition (Doc. 20) and subsequently filed an amended response in opposition (Doc. 26). Defendants have filed a reply. (Doc. 23).

## I.    GENERAL OVERVIEW

The basic facts, as alleged in the First Amended Complaint (Doc. 14) and construed in favor of Plaintiffs, are as follows.

Plaintiffs are five multi-handicapped children and their parents and guardians. (Doc. 14, PageId 214). Plaintiff H.M. has the physical condition of CDG la (Cogential Disorders of Glycosylation), as well as the physical condition of cerebellar hypoplasia, which is characterized by symptoms of reduced muscle tone, poor fine motor skills, and intellectual disability. (Id., PageId 218-19). She uses a Rifton walker and ankle-foot orthotic for mobility as well as a Rifton Compass Chair for bodily support. (Id., PageId 219). S.P. is a child with Down Syndrome, severe childhood apraxia of speech, severe receptive and expressive language disorders, and

other delays.  (Id., PageId 225).  M.J. has cerebral palsy, and significant challenges with respect to cognition, communication, fine and gross motor skills, adaptive needs, and other delays.  (Id.). D.A. has multiple disabilities that present challenges in the areas of communication, fine and gross motor skills, adaptive skills, and other delays.  (Id.).  J.K. has cerebral palsy, a seizure disorder, and various developmental delays.  (Id.).

The five children were students in Defendant Amanda Kitcho's classroom at Columbia Elementary School, a school operated by the Board of Education of the Kings Local School District.  (Id., PageId 216-18, 220, 225).  Plaintiffs have alleged that Kitcho physically and/or emotionally abused each of the five multi-handicapped children in a variety of ways without any pedagogical purpose while they were in her classroom.[1]  For example, Kitcho often screamed at H.M. and told H.M. she "hated" her, forced H.M. to crawl to the bathroom and elsewhere, despite her known medical need to use her Rifton Walker at all times, secluded H.M. in the bathroom (a/k/a "the torture chamber") and continued to scream at her, walled H.M. off from the classroom to isolate her, provoked H.M. into escalating behaviors, threatened to take her possessions, and deprived her of rewards.  (Id., PageId 220-22).  On one occasion, Kitcho allowed H.M. to attend the library without an aide, which resulted in H.M. falling and hitting her head.  (Id., PageId 222).  Kitcho also frequently put H.M. in the bathroom in her seatbelted Rifton Compass Chair, closed the door, and left her there for "periods of time for punitive reasons unrelated to any possible pedagogical purpose" while H.M. cried and screamed.  (Id.). When H.M. learned how to unbuckle her seatbelt and crawl to the bathroom door to try to get back into the classroom, Kitcho would stand in front of the door and prevent her from exiting. (Id., PageId 223).  One day, Kitcho put duct tape on the seatbelt of the Rifton Compass Chair to

---

[1]  A more complete description of the allegations as to the conduct of Kitcho are set forth in a contemporaneously-filed Opinion and Order.

make it impossible for H.M. to break free, slid H.M. into the bathroom, and left her in the chair, crying and screaming, for a significant period of time.  (Id., PageId 223).  H.M. also screamed that she had to go to the restroom.  (Id.).

With respect to S.P., M.J., D.A., and J.K., Kitcho also is alleged to have physically and/or emotionally abused them without a pedagogical purpose.  (Id)  Some conduct included startling them into escalating behaviors, throwing possessions into the trash, walling them off behind dividers, depriving them of snacks, taking food from their lunches, making S.P. stand in front of the class for extended periods of time, physically turning M.J. for no reason, and depriving them of and/or intentionally ignoring their basic needs.  (Id., PageId 221, 225-26).  Other conduct of Kitcho included intentionally knocking a table into the mouth of a student, pushing a student during a camp outing, and pushing another student at school in front of other children.  (Id., PageId 226).

All of the children are alleged to have displayed severe regressive behaviors while in Kitcho's classroom.  (Id., PageId 226-27).

The children's parents were not informed of Kitcho's conduct while it was ongoing even though multiple individuals purportedly were aware that such behavior was occurring.  (Id., PageId 228-30).  Defendant Bogaert, the assistant principal of Columbia at the time who eventually became the principal for portions of the relevant period, is alleged to have entered Kitcho's classroom on at least one occasion when H.M. was isolated in the bathroom crying and screaming to be let out.  (Id., PageId 224, 227).  Rather than intervene, she exited the classroom, allowing Kitcho's conduct to continue that day and beyond.  (Id.).

Several aides in Kitcho's classroom expressed concerns about Kitcho's conduct to the principals, who allegedly have "final authority to remedy the problem."  (Id., PageId 227-29).

Prior to the 2010-2011 school year, two aides approached Defendant Gasper, the principal at the time, with concerns about Kitcho's adverse treatment of her students.  (Id., PageId 229).  Defendant Gasper allegedly responded that Kitcho "went to college for this; she knows what she's doing; you're just the aide so you kind of follow the lead . . . ."  (Id.).  A teacher's aide in Kitcho's classroom also "repeatedly reported" Kitcho's conduct to various principals at Columbia.  (Id., PageId 223, 227).  Plaintiffs allege that Defendant Gasper advised that aide not to worry about Kitcho's conduct.  (Id., PageId 227).  That teacher's aide eventually resigned her position and told the then-principal at Columbia, Defendant Bogaert: "I no longer want to feel ashamed that I went to work and watched kids being mistreated.  My lead teacher [Kitcho] goes against everything that we learn each summer at our aide training and lacks all the qualities that are found in a decent and caring teacher."  (Id, PageId 228).  Defendant Bogaert provided the information to Kings' Superintendent Valerie Browning who expressed concern about the resignation.  (Id., PageId 233).  A second teacher's aide in Kitcho's classroom also reported to the principals that Kitcho treated H.M. inappropriately in different ways.  (Id., PageId 228).

The Columbia librarian likewise complained regularly to the principals that students in Kitcho's classroom were not being properly treated and supervised.  (Id.).  A Kings' teacher also opined that Defendant principals did not want to hear anything more when she informed them how Kitcho treated the multi-handicapped students in the years prior to H.M.'s placement in Kitcho's classroom.  (Id.).

Plaintiffs allege that Defendants refused to act despite having notice of Kitcho's conduct until several events occurred:  (1) the persistent teacher's aide who resigned on January 6, 2012 threatened to take the information about Kitcho to the district superintendent, the board of education, and the media; (2) the teacher aide's husband wrote a letter to Kings Superintendent

Valerie Browning within a week of that resignation demanding action; and (3) the teacher aide's husband personally met with the Kings Board of Education about the issues and demanded they be addressed, in response to which the Board adjourned into executive session rather than allow a public airing of the matter. (Id., PageId 230).

Following those events, Kings conducted several depositions of various staff and administrators, which were attended by Kings' counsel, the deponent, at least one union representative representing Kitcho, and the Assistant Superintendent. (Id., PageId 230-31). Neither the administration nor any Kings personnel reported the alleged abuse by Kitcho to law enforcement authorities until the librarian reported it to the Warren County Sheriff's Office on or about February 3, 2012. (Id., PageId 231). From February 9, 2012 through the end of March 2012, the Child Abuse Unit of the Warren County Sheriff's Office conducted its investigation. (Id.). The Warren County Prosecutor's Office later determined it would not criminally indict Kitcho for felony charges or criminally prosecute Kings administrators for their failure to report the alleged abuse as required by Ohio Rev. Code § 2151.421. (Id.). While Kitcho thereafter was permitted to resign with a severance payment, no negative reference, and a favorable letter of recommendation, no administrator at Kings was reprimanded for the failure to timely report the alleged abuse. (Id., PageId 232-33). The Ohio Department of Education also initiated an investigation. (Id., PageId 232).

The children's parents contend they were not informed of Kitcho's conduct while it was ongoing or while it was being investigated. (Id., PageId 228-30, 233). Kings has a policy that expressly forbids school employees from informing the parents or legal guardians of any child suspected of being abused. (Id., PageId 234). The parents assert that they were falsely told by Defendant Bogaert that Kitcho was out on leave after she had been permitted to resign, that

5

S.P.'s parents later were told falsely by Defendant Bogaert that Kitcho's conduct was not the reason she allowed her to resign with pay, and that S.P.'s parents were assured falsely by Defendant Bogaert that the alleged abuse did not involve S.P.  (Doc. 14, PageId 232-33). Defendant Bogaert informed the parents that he did not have information to share about the current situation in Kitcho's classroom, and Kings' Superintendent Browning subsequently approved a letter to the parents of the children in Kitcho's classroom stating:  "I want to let you know that at this point in time, I do not have a set return date for Mrs. Kitcho."  (Id., PageId 233-34).

The Columbia librarian wrote to Defendant Bogaert indicating that she had shared information with her before about Kitcho and indicated that any claim as to not being told about the conduct of Kitcho before was inaccurate.  (Id., PageId 233-34).

A citizen activist learned of the alleged abuse and sought the disclosure of the records and transcripts relating to the investigation. After protracted disputes and public records requests, some records and transcripts relating to the investigations were released.  (Id., PageId 235-36).  It was not until mid-2013 in the course of those disputes and release of records that the parents and guardians of the children in Kitcho's classroom first learned of the allegations against Kitcho and the involvement of Defendants Gasper, Bogaert, and Kings.  (Id., PageId 235-36, 239).

Plaintiffs filed this lawsuit on January 20, 2014.  (Doc. 1).  On April 11, 2014, Plaintiffs filed their Amended Complaint.  (Doc. 14).

## II.  <u>STANDARD OF REVIEW</u>

 "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett*

*v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Nonetheless, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## III.   ANALYSIS

Defendants assert dismissal of the various claims against Defendants Gasper, Bogaert, and/or Kings is appropriate for multiple reasons. Those claims and the pertinent arguments are addressed below.

### A.   Section 1983 Claims In Counts One Through Four – Individual and Supervisory Liability

To state a viable § 1983 claim, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the deprivation was caused by a person while acting under color of state law. *Flagg Bros. v.*

*Brooks*, 436 U.S. 149, 155-57 (1978); *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

The doctrine of *respondeat superior* does not apply, however, in § 1983 lawsuits to impute liability onto supervisory personnel. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). To plausibly find supervisory personnel liable, Plaintiffs must have sufficiently alleged that the supervisors condoned, encouraged or knowingly acquiesced in the alleged conduct of the employee. *Id.* (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)). The acts of one's subordinates or the mere failure to act standing alone are not enough to hold a supervisor liable. *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

## 1.  Counts one through three

Defendants argue that Plaintiffs have failed to plead a viable constitutional violation for unlawful seizure, excessive force, or substantive due process. Specifically, Defendants argue that Plaintiffs' Amended Complaint does not show that Kitcho inflicted serious physical injuries on the Plaintiff-children, such that the claims cannot rise to the level necessary to state a constitutional claim. For the same reasons set forth in the Opinion and Order as to Kitcho, the Court concludes that the excessive force claim in Count Two must be dismissed but that Plaintiffs have alleged plausible constitutional violations against Kitcho based on an unlawful seizure under the Fourth Amendment and substantive due process under the Fourteenth Amendment.

With respect to the surviving claims for unlawful seizure under the Fourth Amendment and for substantive due process violations under the Fourteenth Amendment, Plaintiffs also seek

to assert supervisory liability against Defendants Gasper and Bogaert. Plaintiffs contend that both Defendant Gasper and Defendant Bogaert encouraged, condoned, or knowingly acquiesced in the conduct of Kitcho and are therefore liable.

Upon review, the Court finds that the allegations are sufficient to make it plausible Defendants Gasper and Bogaert implicitly authorized, condoned, or knowingly acquiesced in the conduct of Kitcho. Plaintiffs alleged that multiple individuals informed "Defendant principals" about inappropriate conduct of Kitcho even prior to 2010-2011 school year. (Doc. 14, PageId 226-29). Defendant principals also are alleged to have instructed a complaining aide to ignore the misconduct of Kitcho. (Id., PageId 223). In response to one of the aides, Defendant Gasper specifically is alleged to have stated that Kitcho "went to college for this; she knows what she's doing; you're just the aide so you kind of follow the lead." (Id., PageId 229). Plaintiffs also allege that other school employees reported inappropriate conduct to Defendant principals at other times. (Id., PageId 228-29). Plaintiffs alleged that a teacher's aide in Kitcho's classroom specifically reported Kitcho's misconduct to Defendant Gasper, and was persistent about her reporting to the point she eventually resigned when no action was taken. (Id., PageId 224-28). Defendant Gasper is alleged to have advised that aide not to worry about Kitcho's conduct. (Id., PageId 228). Further, Plaintiffs alleged that another aide reported to "Defendant principals" that Kitcho treated H.M. inappropriately in different ways, including yelling at her for no reason, unreasonably and intentionally punishing H.M. for no reason, and physically restraining H.M. by learning across her and pushing H.M. down, but that Defendant principals did not take action. (Id.).

In addition to the above allegations concerning the multiple different reports about Kitcho's conduct to "Defendant principals," Plaintiffs alleged that Defendant Bogaert witnessed

9

at least one of the incidents where Kitcho locked H.M. in the bathroom with her crying and screaming to be let out, and Defendant Bogaert chose not to act or intervene. (Doc. 14, PageId 227). Further, Plaintiffs allege that one teacher's aide, upon resigning, informed Defendant Bogaert that the actions of Kitcho's went against all of her training and that Kitcho's conduct was inappropriate, and that Defendant Bogaert again chose not to act or intervene. (Id., PageId 228). Plaintiffs assert that Defendant Bogaert instead provided false information to parents about Kitcho's status, told S.P.'s parents false information about Kitcho's resignation, falsely assured them that the abuse did not involve S.P., and refused to provide any information about Kitcho's alleged abuse. (Id., PageId 231, 233). Plaintiffs further allege that the Columbia librarian specifically informed Defendant Bogaert about Kitcho's conduct towards the children, including H.M. (Doc. 14, PageId 233-34).

Construing the Amended Complaint in the light most favorable to Plaintiffs, accepting its allegations as true, and drawing all reasonable inferences in favor of Plaintiffs, the allegations are sufficient to state plausible claims against Kitcho, Defendant Gasper, and Defendant Bogaert for unlawful seizure and substantive due process violations.

## 2. **Count four**

The Equal Protection Clause prohibits states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one differently than others similarly situated without any rational basis for the difference. *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014) (citing *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010)). Yet, the Equal Protection Clause does not forbid classifications. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008). Rather, it prohibits differential treatment of persons who are in all relevant respects alike. *Id.* (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10

(1992)).  "Disabled persons are not a suspect class for purpose of an equal protection challenge."
*Id.*  "A state may therefore treat disabled students differently, so long as its actions are rationally
related to some legitimate governmental purpose."  *Id.* (citing *Bd. of Trustees of Univ. of Ala. v.
Garrett*, 531 U.S. 356, 366-68 (2001)).

Defendants contend that "[t]here is not a single sentence which asserts any fact pointing
to disparate treatment of the Plaintiff-children as compared to non-handicapped children."  (Doc.
17, PageId 292).  The Court disagrees, however, and finds that there are sufficient facts alleged
as to the treatment of Plaintiff-children from which it is reasonable to infer plausible disparate
treatment at this early stage.  Indeed, as explained in the Opinion and Order on Kitcho's motion
for judgment on the pleadings, Plaintiffs have alleged that Kitcho's conduct towards Plaintiff-
children, including but not limited to isolating/secluding them, startling them into escalating
behaviors, physically moving them against their will, and depriving them of and/or ignoring
basic needs, lacked any pedagogical purpose.  It also is reasonable to infer from the alleged facts
that the treatment was solely due to Plaintiff-children's multiple handicaps without any rational
relationship to a legitimate governmental purpose and that non-disabled students were not treated
in the same manner.

With respect to the supervisory liability of Defendant Gasper and Defendant Bogaert, the
allegations that support the unlawful seizure and substantive due process claims above likewise
make it plausible that they implicitly authorized, condoned, or knowingly acquiesced in the
allegedly unconstitutional conduct of Kitcho, and treated the disabled students differently from
non-disabled students without any rational relationship to a legitimate governmental purpose.  At
this early stage, those allegations thus are sufficient to withstand dismissal.

As for the parents and guardians, Plaintiffs also have sufficiently alleged they were treated disparately by Defendants Gasper and Bogaert due to their status as the parents and guardians of multi-handicapped students, which lacked any rational relationship to a legitimate governmental purpose.  The Amended Complaint contains additional allegations concerning Defendant Bogaert's direct knowledge as to the treatment of H.M., Defendant Bogaert's and Defendant Gasper's direct knowledge of reports of purported mistreatment of Plaintiff-children by multiple sources for a prolonged period of time, their decisions not to  report the purported abuse to law enforcement or others, and Defendant Bogaert's decision to provide false information to the parents and guardians about the status of Kitcho's employment.  These allegations provide a sufficient factual basis to provide Defendants Gasper and Bogaert fair notice of the claim and the grounds upon which it rests.  Those facts also support a reasonable inference that their treatment was due to the fact that parents and guardians of multi-handicapped students would not otherwise be able to obtain the relevant information and that parents and guardians of non-disabled students in similar situations thus are treated more favorably without a rational basis for the difference.[2]

Accordingly, the Equal Protection claim should not be dismissed against Kitcho, Defendant Gasper, or Defendant Bogaert at this early stage.

### 3.  <u>Qualified immunity of Defendants Gasper and Bogaert</u>

---

[2] While one of the policies concerning child abuse and/or neglect would appear to apply across the board such that any treatment under that policy was not necessarily disparate, that assumes that the policy is applicable to the circumstances of alleged abuse of a student by a teacher and further assumes that the policy has not been applied differently in cases of alleged abuse of a non-disabled student by a teacher.  Indeed, Plaintiffs have alleged that Defendants "had a pattern and practice of treating multi-handicapped students and their families differently than typically developing children and their families."  (Doc. 14, PageId 242).  Construing the allegations in the light most favorable to Plaintiffs, it still is plausible that the parents and guardians of Plaintiff-children were treated differently than parents and guardians of non-disabled students under similar circumstances.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit has explained:

> To determine whether a government official is entitled to qualified immunity, we consider the two-part test described in *Saucier v. Katz*, which asks whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was "clearly established." 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001). We are free to address the second question first, analyzing whether the constitutional right that purportedly prohibited a defendant's conduct was clearly established, without addressing whether there was a constitutional violation at all. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

*Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014) (footnote omitted). To that end, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Nevertheless, there need not be a prior case directly on point for a law to be clearly established; generalized statements of the law or a general constitutional rule already identified in the decisional law are capable of giving fair and clear warnings. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) (citing *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Although qualified immunity typically is addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss. *Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 677 (6th Cir. 2001).

For the reasons explained *supra* as well as in the Opinion and Order on Defendant Kitcho's motion for judgment on the pleadings, Plaintiffs have alleged plausible constitutional violations by Defendants to satisfy the first prong, that is, to show a plausible constitutional violations by Defendants Gasper and Bogaert under Counts One (Fourth Amendment

13

Unreasonable Seizure), Three (Fourteenth Amendment Substantive Due Process), and Four (Fourteenth Amendment Equal Protection) of the Amended Complaint.

Turning to the second prong, Defendants Gasper and Bogaert contend that the constitutional right to be free from the type of abuse, injuries, and violations alleged by Plaintiffs is not clearly established. For the same reasons identified in the Opinion and Order on Defendant Kitcho's motion for judgment on the pleadings, the Court concludes that, upon examining the allegations in the light most favorable to Plaintiffs, the rights at issue are clearly established such that a reasonable school official should know that the alleged acts were unconstitutional, even if the specific acts in question have not themselves previously been held unlawful. *Lanier*, 520 U.S. at 271; *New Jersey v. T. L. O.*, 469 U.S. 325, 341-42 (1985). Further, the law is clearly established that supervisory personnel can be liable when they condone, encourage or knowingly acquiesce in the unconstitutional conduct of the employee. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)).

With respect to the claims for substantive due process violations, the right to be free from excessive corporal punishment in the school setting, particularly where it is not administered for any pedagogical purpose, is clearly established. *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987); *see also* Ohio Rev. Code § 3319.41. More specifically, the Sixth Circuit has held that school corporal punishment may violate a substantive due process right when the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a mere careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. *Webb*, 828 F.2d at

14

1158. As recognized by the Supreme Court in 1998, conduct "intended to injure" without any justifiable government interest most clearly will rise to the conscience-shocking level. *County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998); *see also Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014) (relying on *County of Sacramento*). Indeed, "[t]he unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that '[t]he easiest cases don't even arise.'" *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 377 (2009) (quoting *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990)). Moreover, the law is clearly established that any such conduct of a government officer must be rationally related to a legitimate state interest, that deliberate indifference to an individual's federally protected rights may be conscience shocking, and that supervisory personnel can be liable when they condone, encourage or knowingly acquiesce in the unconstitutional conduct of an employee. *Turner*, 412 F.3d at 643 (citing *Bellamy*, 729 F.2d at 421); *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001); *Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997).[3] As such, a reasonable school official had fair notice that he or she could not condone, encourage, or knowingly acquiesce in actions taken with the intent to injure a special

---

[3] More than 25 years ago, the Tenth Circuit addressed an issue concerning bodily restraint that is similar to that raised in this case. *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987). There, the parents of an eight-year-old girl sued school officials under § 1983 for allegedly tying her to a chair with a jump rope for the greater part of two days, denying her access to the bathroom and thereby causing her humiliation and mental anguish and impairment in her ability to study productively. *Id.* at 305. The circuit court affirmed the denial of qualified immunity on a motion to dismiss, stating:

> We are persuaded that in January 1985, a competent teacher knew or should have known that to tie a second-grade student to a chair for an entire school day and for a substantial portion of a second day, as an educational exercise, with no suggested justification, such as punishment or discipline, was constitutionally impermissible. A young student who is not being properly punished or disciplined has a constitutional right not to be lashed to a chair through the school day and denied, among other things, the basic liberty of access to the bathroom when needed.

*Id.*

education student and without any pedagogical purpose, even if the specific actions in question had not previously been held unlawful. *Lanier*, 520 U.S. at 271.[4]

Second, the allegations construed in the light most favorable to Plaintiffs implicate a right to be free from unlawful seizures in the school setting. At the time of the alleged conduct, it was well-established that the Fourth Amendment applied, although in a relaxed manner, to school officials in the school setting. *T. L. O.*, 469 U.S. at 341-42; *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008) (applying Fourth Amendment to claim of school official's unlawful detainment of a student, and stating that a "school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule") (internal quotation marks omitted).[5] Even in novel factual circumstances, "'officials can still be on notice that their conduct violates established law.'" *Safford Unified Sch. Dist. #1*, 557 U.S. at 377-78 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Court finds that a reasonable teacher, at a minimum, had fair notice that he or she could not condone, encourage, or knowingly acquiesce in actions of an employee that are not justified by a pedagogical purpose and not reasonably related in scope to the pedagogical purpose, even if the specific action in question had not itself been previously held unlawful. *Lanier*, 520 U.S. at 271; *T. L. O.*, 469 U.S. at 341-42; *Turner*, 412 F.3d at 643 (citing *Bellamy*, 729 F.2d at 421).

Third, the allegations construed in favor of Plaintiffs implicate the rights under the Equal Protection Clause. Specifically, it implicates Plaintiffs' rights to be free from disparate treatment

---

[4] While discovery will permit a more exact analysis of the facts and clearly established law at a later stage of the litigation, the Court concludes that the application of the law to the allegations construed in the light most favorable to Plaintiffs is clearly established.

[5] Other courts likewise have applied the Fourth Amendment to allegations of unlawful seizures of students. *Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003); *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1014 (7th Cir. 1995); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079-80 (5th Cir. 1995); *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989); *Sims v. Bracken Cnty. Sch. Dist.*, No. 10-33, 2010 U.S. Dist. LEXIS 110822, at *30 (E.D. Ky. Oct. 18, 2010).

as multi-handicapped students without any rational relationship to a legitimate governmental purpose. That right is clearly established in the Sixth Circuit. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008).

Accordingly, the grant of qualified immunity is not appropriate at this early stage.

**B.  Section 1983 Claim in Count Five – Municipal Liability**

When a § 1983 claim is made against a municipality, two distinct issues must be analyzed: (1) whether the plaintiffs' harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). Given that the Court has found plausible constitutional violations, Plaintiffs may maintain the claims against the municipal defendants under § 1983 if they have raised a right to relief above the speculative level as to the second issue. *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003); *see also Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007). With respect to the second inquiry, municipalities and other bodies of local government may be held responsible under § 1983 if plaintiffs allege that the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or a constitutional deprivation[] visited pursuant to a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell*, 436 U.S. at 690-91)); *see also Bright v. Gallia County*, 753 F.3d 639, 660 (6th Cir. 2014) (same as *Shamaeizadeh*). Stated differently, a plaintiff can make a showing of municipal liability by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making

authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of acquiescence in federal rights violations. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014). Municipalities and other governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation such that the government's deliberate conduct can be deemed the "moving force" behind the violation. *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citing *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Here, Plaintiffs appear to assert three theories to support municipal liability on the second issue: (1) final policymakers ratified the alleged unconstitutional conduct of Defendant Kitcho; (2) Defendant Kings deliberately failed to train Kitcho and its employees to safeguard against such constitutional deprivations; and (3) Defendant Kings deliberately failed to supervise its employees to safeguard against such constitutional violations.

### 1. Ratification

 "Under appropriate circumstances, even a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc). Such a single act or decision "will only be construed as official policy when they are those of a body or an official 'responsible for establishing final government policy respecting such activity . . . .'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). As explained in *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), the "[m]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of

superior officials."  "Officials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority."  *Feliciano*, 988 F.2d at 655 (citing *Pembaur*, 475 U.S. at 483). "Whether a governmental official is vested with the authority to make official policy is a question of state law."  *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). Therefore, the Court must look to such things as statutes, ordinances, and regulations, as well as less formal sources of law such as local practice and custom.  *Feliciano*, 988 F.2d at 655 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989)).

Plaintiffs allege that Defendants Gasper and Bogaert, as principals at Columbia at various times during the relevant period, were policymakers who ratified by the conduct of Kitcho. Defendants cite to *Hull v. Cuyahoga Valley Joint Vocational Sch. Bd. of Educ.*, 926 F.2d 505 (6th Cir. 1991) and *Justus v. Brown*, 42 Ohio St. 2d 53, 59 (1975), for their proposition that "[t]he law is clear that in the context of public school operation, only the board of education is the policymaker."  (Doc. 17, PageId 295).  Both cases concern the right of the board of education to make employment decisions, as set forth in the Ohio Revised Code.  *Hull*, 926 F.2d at 515 ("Section 3319.11 of the Ohio Revised Code states that a board of education has final authority to establish employment policy and make renewal and non-renewal decisions."); *Justus*, 42 Ohio St. 2d at 58 (recognizing that the ultimate responsibility for employing teachers rests with the board of education under Ohio Rev. Code § 3319.07, and that the board has the final say in all reemployment situations under Ohio Rev. Code § 3319.11).

Upon review, the Court finds it plausible at this stage that Defendants Gasper and Bogaert constitute policymakers upon whose decisions municipal liability may be based in this

19

case.  While Ohio Rev. Code § 3319.11 vests the board of education with the final authority to establish employment policy, that statute does not make it implausible that principals were delegated final policymaking authority or that there was a custom of allowing principals to make final policy decisions with respect to the day-to-day conduct of employees, the necessity of reporting potential abuse to authorities, and the appropriateness of informing, or not informing, parents of special needs children of the potential abuse.  Defendants do not address those particular decisions or how they fall only within the authority of the board of education to render employment decisions.  Considering the possibility that others could have the policymaking authority for other decisions, and recognizing that officials can have their policymaking authority delegated to them by other officials who have final policymaking authority, the Court finds Defendants have not shown that it is implausible that Defendants Gasper and Bogaert were policymakers with respect to those decisions.[6]  Accordingly, the Court declines to dismiss the municipal liability claim on this basis at this time.[7]

### 2.  Failure to train

The inadequacy of training also may serve as a basis for § 1983 municipal liability.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim

---

[6] To the extent Plaintiffs also intend to allege that the board of education was aware of the allegations and decisions of Defendants Gasper and Bogaert and specifically approved of those actions, that constitutes a different theory of ratification.  As pointed out by Defendants, a board of education has final policymaking authority as to employment decisions.  In this case, Plaintiffs have alleged that the librarian indicated that "Kings is sweeping this under the carpet" and that she had received "'threatening innuendos from my employers,'" that the Superintendent expressed concern when notified of the resignation of Kitcho's teacher's aide, that Kings reviewed the actions but never disciplined either Defendant Gasper or Bogaert, that Kings knew about the alleged conduct but allowed Kitcho to resign on favorable terms, that Kings knew about the alleged conduct but did not report it to law enforcement, and that Kings never informed the parents or guardians of the children about the allegations or investigation.  (Doc. 14, PageId 229-33).  Those factual allegations raise a right to relief based upon ratification by the Kings, through its board of education, above a speculative level.

[7]The Court nevertheless recognizes that some of Plaintiffs' allegations may suggest that Defendants Gasper and Bogaert were merely exercising discretion in their positions and that their decisions were reviewable or otherwise constrained by the policies of final policymakers (*see, e.g.*, Doc. 14, PageId 229-30, 232). At this time, however, the Court finds that it is plausible that Defendants Gasper and Bogaert were final policymakers, and that more discovery and information is necessary to make a final determination on the issue.

turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). The failure to train must amount to deliberate indifference to the legal rights of persons with whom the employees come into contact. *Connick*, 131 S. Ct. at 1359 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, (1997)). Evidence of a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 131 S. Ct. at 1359-60 (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 409). A policymakers' continued adherence to an approach they know or should know has failed to prevent tortious conduct may establish deliberate indifference. *Id.* Without notice that training is deficient in a particular respect, the decision-makers cannot be found to have deliberately chosen a training program that will cause violations of constitutional rights. *Id.*

At this time, Plaintiffs have sufficiently alleged a plausible claim against the municipality for failure to train employees to identify potential abuse and appropriately report and inform parents of allegations of abuse by a teacher. Plaintiffs are not required to prove their claim at this time, and instead, must allege only sufficient allegations to make it plausible that the municipality failed to train. Plaintiffs allege that during Kitcho's more than four years at the school "Kings administration received multiple, specific, written and oral reports of Kitcho's abuse of students under her control over a period of more than a year from more than one member of their staff." (Doc. 14, PageId 227). At least some conduct was

reported to the principals prior to the 2010-2011 school year and it is reasonable to infer that the information was not subsequently reported to law enforcement or to parents by the principals or the employees.  (Doc. 14, PageId 229).  Suggestive of some knowledge by Defendant Kings of the allegations as well as the failures to report the allegations to others are the librarian's statement that "Kings is sweeping this under the carpet" and that she was received "'threatening innuendos from my employers," as well as the response from the Superintendent when notified of the resignation of Kitcho's teacher's aide combined with the lack of immediate action (Doc. 14, PageId 229, 233).  In addition, Plaintiffs also have more generally alleged that Defendant Kings had a pattern and practice of not addressing potential harm to special needs students and that it continued that pattern and practice in this instance by not addressing the failures to report the abuse or by not otherwise remedying the failure to report.  (Doc. 14, PageId 242-43).  They assert that Kings instead continued not to report the information to law enforcement or parents, and that law enforcement officials later required Kings to conduct training.  (Doc. 14, PageId 242).  From these allegations, it is plausible that a prior instance of unconstitutional conduct existed that was not appropriately identified and/or reported of which Kings knew or should have known.  It also is reasonable to infer at this time that Kings made a deliberate choice not to provide the appropriate training despite a known risk of harm.  While subsequent discovery will assist in better understanding the pattern and practice as well as the knowledge of Kings, the allegations at this time are sufficient to survive dismissal.

### 3.  <u>Failure to supervise</u>

The Sixth Circuit has recognized that a failure-to-supervise claim that is distinct from a failure-to-train claim is uncommon. Specifically, in *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010), the Sixth Circuit stated:

> This "failure to supervise" theory of municipal liability is a rare one. Most agree that it exists and some allege they have seen it, but few actual specimens have been proved. It appears to relate to two more common theories of municipal liability: an inadequate-training theory, *see, e.g., Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006), or an "acquiesce[nce]" theory, *e.g., Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246, 1248 (6th Cir. 1989).

*See also Amerson v. Waterford Twp.*, 562 F. App'x 484, 491-92 (6th Cir. 2014) (citing *Mize*, 375 F. App'x at 500). To prove a failure-to-supervise claim, a plaintiff must meet the same standards required to prove a failure-to-train claim, that is, a municipality's deliberate indifference to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the assault. *Amerson*, 562 F. App'x at 492 (citing *Mize*, 365 F. App'x at 500). A conclusion of deliberate indifference may result from a municipality's failure to act in response to repeated complaints of constitutional violations. *See, e.g., Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

There are allegations in the amended complaint of repeated reports of alleged abuse by Kitcho and allegations, as explained with respect to the failure-to-train claim, that make it plausible that Kings knew or should have known about the allegations of abuse as well as the failure to report the allegations to law enforcement or parents. There also are allegations that Kings failed to respond, to discipline Kitcho, or to otherwise take direct actions to review the appropriateness of her conduct for a significant period of time during which the alleged abuse continued. While the Court does not opine on what evidence ultimately will suffice to sustain the failure-to-supervise claim, it finds that the allegations are sufficient at this time to state a plausible claim for relief.

## C. **Section 504 of the Rehabilitation Act and the ADA in Count Six**

Defendants argue that Plaintiffs claim in Count Six must be dismissed because (1) Plaintiffs failed to exhaust their administrative remedies as required under IDEA, and (2) Plaintiffs have not alleged sufficient facts to sustain the claim.

### 1. **Whether Plaintiffs failed to exhaust claims**

The IDEA exhaustion requirement contained in 20 U.S.C. § 1415,[8] applies if any of claims "allege[] injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008) (quoting *Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1048 (9th Cir. 2002)). Plaintiffs are not excused from exhaustion simply because they are seeking monetary damages. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 918 (6th Cir. 2000). Nevertheless, Plaintiffs are not required to exhaust their claims when they show that exhaustion would be futile. *Id.*

Here, the Court finds that exhaustion under IDEA is excused. Not only do the claims relate to numerous alleged acts of verbal and physical abuse, which the Sixth Circuit has found are "non-educational in nature and cannot be remedied through the administrative process[,]" *see F. H. v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014), but requiring exhaustion would be futile or inadequate to protect the plaintiff's rights, *Id.* (citing *Covington*, 205 F.3d at 317). Exhaustion has been found to be futile or inadequate in circumstances of alleged abuse when the

---

[8] The Ohio Administrate Code has a similar provision, which states:

Nothing in this rule restricts or limits the rights, procedures, and remedies available under the United States Constitution, the Americans with Disabilities Act of 1990, January 1990, Title V of the Rehabilitation Act of 1973 as amended by the Rehabilitation Act Amendments of 1998, August 1998, or other federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under these laws seeking relief that is also available under Section 615 of the IDEA, the procedures under paragraphs (K)(7) and (K)(14) of this rule must be exhausted to the same extent as would be required had the action been brought under Section 615 of the IDEA**.

Ohio Admin. Code § 3301-51-05 (emphasis added).

injuries are wholly in the past and the relationship at issue no longer exists. *See Covington*, 205 F.3d at 917 (finding exhaustion would be futile where the injured child already had graduated from the special education school, his injuries were wholly in the past, and money damages were therefore the only remedy that would make him whole); *see also Domingo v. Kowalski*, No. 3:13-cv-94, 2014 U.S. Dist. LEXIS 121422, at *29-30 (N.D. Ohio Aug. 29, 2014) (finding exhaustion of IDEA administrative remedies futile when nine years had passed since the alleged abuse, the children had progressed beyond the educational stage where abuse occurred, and the alleged abuse was therefore wholly in the past). The primary allegations in this case stem from the actions occurring in or around the 2010-2011 school year. For a significant period of time, the parents and guardians of the special needs children were unaware of the circumstances even though both the principals and Kings allegedly knew of the allegations for quite some time. Indeed, there have been protracted disputes attempting to obtain the records relating to the circumstances surrounding the alleged abuse. By the time Plaintiffs acquired the relevant information and filed this lawsuit in January 2014, the teacher at the center of the abuse allegations had long since been terminated (in or about January 2012) and the alleged acts at issue by Kings and Defendants Gasper and Bogaert had essentially terminated, thereby ending any circumstances about which Plaintiffs would complain through the administrative process. The only issues remaining are retrospective. Exhaustion would therefore be futile and inadequate to protect Plaintiffs' rights.

### 2. **Whether Plaintiffs have alleged sufficient facts**

Defendants argue that there are no facts alleged that would show Kings engaged in any discriminatory action towards the Plaintiff-children based on their disabilities or denied them any rights under the ADA or § 504. (Doc. 17, PageId 301). They claim that "Plaintiffs minimally

describe a variety of events regarding Kitcho's alleged mistreatment of Plaintiff-children without any facts indicating when these occurred, how often they occurred, that Kitcho treated non-disabled children more favorably, or that these alleged occurrences were in [any] way related to the Plaintiff-children's claimed disabilities or denied them any rights under the ADA or § 504." (Id.).

The Court disagrees. The basic elements for either claim that a plaintiff must prove are (1) that he or she is a qualified person with a disability; (2) that he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program; and (3) the denial or discrimination was because of his or her disability. *Owens v. O'Dea*, No. 97-5517, 1998 U.S. App. LEXIS 10761, at *6-7 (6th Cir. May 27, 1998). As explained in the Opinion and Order on Kitcho's motion for judgment on the pleadings, Plaintiffs have alleged with specific facts and with appropriate detail that Kitcho's conduct towards Plaintiff-children, including but not limited to isolating/secluding them, startling them into escalating behaviors, physically moving them against their will, and depriving them of and/or ignoring basic needs, lacked any pedagogical purpose. They also have alleged facts, as previously explained, that Kings, the Superintendent, and the principals knew about, acquiesced in, condoned, and/or ratified that behavior, and declined to address the allegations in any meaningful way. It also is reasonable to infer from the alleged facts that the treatment was solely due to Plaintiff-children's multiple handicaps and that non-disabled students were not treated in the same manner.

Accordingly, dismissal of those claims is not appropriate at this time.

### D. State Law claims in Counts Seven, Ten, and Eleven[9]

---

[9] Counts Eight and Nine are not asserted against Defendants Kings, Gasper, or Bogaert. (*See* Doc. 14, PageId 244-45).

Plaintiffs assert three state claims against Defendants Kings, Gasper, and Bogaert, which are:  (1) intentional infliction of emotional distress (Count Seven); (2) negligence per se based on alleged violations of Ohio Rev. Code § 2151.421 (Count Ten); and (3) loss of consortium (Count Eleven).  Defendants argue they cannot be liable under any of the three theories.  Defendants' arguments are addressed below.

### 1.  <u>Count seven</u>

Defendants move to dismiss Plaintiffs' intentional infliction of emotional distress claim in Count Seven because (1) Defendant Kings is entitled to immunity under Ohio Rev. Code § 2744; (2) Defendants Gasper and Bogaert are entitled to immunity under Ohio Rev. Code § 2744 and 20 U.S.C. § 6731, et. seq.; and (3) the claim is insufficient as a matter of law.  (Doc. 14, PageId 304-08).

### a. Immunity of Defendant Kings under Ohio Rev. Code § 2744

Defendants contend that Kings is immune from liability under Ohio Rev. Code § 2744.01 (F) and Section 2744.02(A)(1).  Ohio uses a three-tiered analysis to determine whether a political subdivision is immune from liability.  *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435-36 (6th Cir. 2014) (citing *Elston v. Howland Local Sch.*, 113 Ohio St. 3d 314 (2007)).  The first tier is a general grant of immunity from liability for "injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  Ohio Rev. Code § 2744.02(A)(1).  The second tier requires a determination as to whether one of the exceptions set forth in Ohio Rev. Code § 2744.02(B) applies.  *Id.* at 436.  In the third tier, immunity may be restored if a political subdivision can successfully assert one of the defenses listed in Ohio Rev. Code § 2744.03.  *Id.*

Plaintiffs do not dispute that Defendant Kings is entitled to a presumption of immunity under the first tier of the analysis.  (*See* Doc. 20, PageId 406-08).  Nor do Plaintiffs set forth an exception to immunity with respect to the claim for intentional infliction of emotional distress against Defendant Kings. In fact, Ohio courts routinely have recognized that political subdivisions cannot be liable for intentional torts.  *Wilson v. Stark County Dep't of Human Servs.*, 70 Ohio St. 3d 450, 452 (1994) ("There are no exceptions to immunity for the intentional tort[] of . . . intentional infliction of emotional distress as alleged in this case."); *see also Santino v. Columbus Pub. Schs.*, 833 F. Supp. 2d 780, 800 (S.D. Ohio 2011) ("[T]here are no exceptions to immunity under § 2744.02(A)(1) for the intentional tort of intentional infliction of emotional distress."); *Price v. Austintown Local Sch. Dist. Bd. of Educ.*, 178 Ohio App. 3d 256 (7th Dist. 2008) ("[P]olitical subdivisions are immune from liability from intentional tort claims.").[10] Accordingly, the intentional infliction of emotional distress claim in Count Seven must be dismissed against Defendant Kings.

### b. Immunity of Defendants Gasper and Bogaert under Ohio Rev. Code § 2744

Defendants contend that Gasper and Bogaert are immune from liability under Ohio Rev. Code § 2744.03(A)(6).  Section 2744.03(A)(6) provides that individual employees of a political subdivision are immune from tort liability unless (a) the employee's acts or omissions were manifestly outside the scope of his or her employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon the employee by a section of the Ohio Revised Code.  Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

---

[10] The assault and battery claims, if they had been asserted against Defendant Kings, would be subject to the same analysis.  *Woods v. Miamisburg City Schs.*, 254 F. Supp. 2d 868, 880 (S.D. Ohio 2003).

The allegations in the Complaint and Plaintiffs' arguments demonstrate that Plaintiffs intend to rely on subpart (b) to impose liability against Gasper and Bogaert. As used in subpart (b), malice implies a willful and intentional design to injure or harm another through conduct that is unlawful or unjustified. *Norwell v. City of Cincinnati*, 133 Ohio App. 3d 790 (1999); *see also Otero v. Wood*, 316 F. Supp. 2d 612, 629 (S.D. Ohio 2004). "Bad faith" includes a "dishonest purpose, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Otero*, 316 F. Supp. 3d at 629. "Wanton misconduct" denotes "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012). "Reckless conduct" is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

Here, Plaintiffs have sufficiently alleged facts from which the Court reasonably may infer that Defendants Gasper and Bogaert acted at least in bad faith, or in a wanton or reckless manner. As explained *supra*, the Amended Complaint contains additional allegations concerning Defendant Bogaert's direct knowledge as to the treatment of H.M., Defendant Bogaert's and Defendant Gasper's direct knowledge of reports of purported mistreatment of the special education children by multiple sources for a prolonged period of time, their decisions not to take any action, including reporting the purported abuse to law enforcement or parents or anyone else, and Defendant Bogaert's decision to provide false information to the parents and guardians about the status of Kitcho's employment. These allegations provide a sufficient factual basis to preclude dismissal under Ohio Rev. Code § 2744 at this time.[11]

---

[11]Although Defendants also vaguely and briefly reference 20 U.S.C. § 6731 as a basis for immunity (Doc. 17, PageId 306), the Court declines to address that issue here. *United States v. Robinson*, 390 F.3d 853, 886 (6th

### c.  Sufficiency of Allegations

Defendants argue that Plaintiffs' Amended Complaint "is obviously inadequate to state a cognizable claim" under the standard articulated for an intentional infliction of emotional distress claim in *Kollstedt v. Princeton City Sch. Bd. of Educ.*, No. 1:08-cv-822, 2010 U.S. Dist. LEXIS 13522, at *19-23 (S.D. Ohio Feb. 17, 2010).

As Defendants correctly point out, a claim for intentional infliction of emotional distress in Ohio requires a plaintiff to show that (1) the defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused the plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious.  *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App. 3d 73 (1991).  Extreme and outrageous conduct occurs "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Yeager v. Local Union 20*, 6 Ohio St. 369, 370 (1983) (quoting Restatement (Second) of Torts, § 46 cmt. d (1965)).  Extreme and outrageous conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress.  *Putman v. Liberty Mut. Ins. Co.*, No.1:08-cv-552, 2010 U.S. Dist. LEXIS 63301, at *9 (S.D. Ohio June 25, 2010) (citing *Tschantz v. Ferguson*, 97 Ohio App. 3d 693 (1994); *Mason v. United States Fid. & Guar. Co.*, 69 Ohio App. 3d 309, 317 (1990)).

While the standard for extreme and outrageous conduct is a difficult one to satisfy, the Court finds that the allegations at this time are sufficient to survive a motion to dismiss.  The alleged conscious and careless decisions of Defendants Gasper and Bogaert to acquiesce in,

---

Cir. 2004) ("We have cautioned that . . . it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

condone, or encourage the conduct of Kitcho, to not act upon and/or to withhold information concerning known reports of suspected abuse of special education children, even upon direct observation, and to sweep the conduct and reports under the rug for a prolonged period of time goes beyond mere insults, indignities, threats, annoyances, petty oppressions of other trivialities. Plaintiffs also have sufficiently alleged facts concerning the emotional injuries sustained. Construing the facts in favor of Plaintiffs and drawing all reasonable inferences in their favor, the Court finds Plaintiffs have alleged a plausible claim for relief at this time. A fact-intensive inquiry into the evidence will be necessary to later make a determination on the continuing viability of this claim.

### 2. Count ten

Defendants move to dismiss Count Ten, a claim based upon alleged violations of Ohio Rev. Code § 2151.421, for lack of plausibility.[12] To determine what Plaintiffs' allegations must plausibly show to sustain the claim, the Court considers the language of § 2151.421. Under § 2151.421, teachers, school employees, and school authorities must immediately report to the appropriate agency or person when he or she "knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonable indicates abuse or

---

[12]Defendants do not specifically assert immunity under Ohio Rev. Code § 2744 with respect to Count Ten, although they mention immunity as to the "tort claims" in a later section of the briefing. To the extent Defendants intend to assert immunity as to Count Ten, the argument is not well taken. There is an exception to immunity for political subdivisions and their employees that applies when civil liability is expressly imposed upon the political subdivision or employee by a section of the Ohio Revised Code. As Plaintiffs correctly point out, § 2151.421 codifies the reporting requirements for school employees and school authorities. Ohio Rev. Code § 2151.421(A). It also expressly imposes civil liability upon whoever fails to make a report as required thereunder, which includes school authorities. Ohio Rev. Code § 2151.421(A), (M). Accordingly, Count Ten will not be dismissed at this time on immunity grounds.

neglect of the child . . . ."  Ohio Rev. Code § 2151.421(A)(1)(a)-(b).  Under Ohio Rev. Code § 2151.421(M), "[w]hoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made."  Contrary to Defendants' unsupported arguments, nothing in division (M) ties civil liability to proof of a criminal conviction of the alleged abuser to establish that abuse actually occurred.  The duty in division (A) arises when the individual knows, or has reasonable cause to *suspect* abuse or a *threat* of abuse, and civil liability may arise when such a report is not made, regardless of whether the abuser ever was convicted.[13]  In other words, that division does not require actual abuse that would render an individual criminally liable to have occurred for the duty to report to arise.  A determination thus must be made based upon the facts and evidence as to whether reasonable cause to suspect abuse or a threat of abuse existed.  While a criminal conviction of an alleged abuser may support such a determination, there is no authority requiring such a conviction to impose liability.  Nor does division (M) tie civil liability to a criminal conviction of the alleged non-reporter.  Indeed, the failure to report can separately be a crime and a civil violation, as the standards of culpability are not the same.  Accordingly, Defendants' motion to dismiss on this basis is denied.

### 3.  <u>Count eleven</u>

Under Sixth Circuit and corresponding law, a parent cannot sue for loss of consortium directly under § 1983, the ADA, or § 504.  *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (recognizing that a § 1983 cause of action "is entirely personal to the direct victim of the

---

[13] Under Ohio laws, a child can be considered "abused" as defined therein even when the alleged abuser has not be criminally convicted.  Ohio Rev. Code § 2151.031.  "Abuse" includes endangerment by such things as excessive corporal punishment or cruel physical restraint for a prolonged period of time that is excessive and creates a substantial risk of serious harm to the child, or repeatedly administering unwarranted disciplinary measures where there is a substantial risk that the conduct will seriously impair or retard the child's mental health or development.  Ohio Rev. Code § 2919.22(B).

alleged constitutional tort" and that "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members") (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984)). But where the state law permits a separate state claim for loss of consortium, a derivative loss-of-consortium claim is available where the federal rights were violated in such a way as to cause personal injury. *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 538 (6th Cir. 2010); *see also Lee v. City of Norwalk*, No. 3:11-cv-897, 2012 U.S. Dist. LEXIS 123631, at *35-36 (N.D. Ohio Aug. 30, 2012) (citing *Kinzer v. Metro. Gov't of Nashville & Davidson Cnty.*, 451 F. Supp. 2d 931, 946-47 (M.D. Ten. 2006)). As Ohio law permits a parental claim for loss of consortium of a minor child where a third-party negligently or intentionally causes a legally cognizable injury to the child, *see Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244 (1993), a derivative loss of consortium claim may be maintained.[14]

Further, Plaintiffs have asserted, as explained *supra*, surviving state law claims against Defendants Gasper and Bogaert (Counts Seven and Ten) and Defendant Kings (Count Ten) upon which derivative loss of consortium claims may be maintained. As Plaintiffs do not contest that they cannot maintain a derivative loss of consortium claim based upon any claim for which immunity is appropriate, the Court finds that Plaintiffs cannot maintain a derivative claim for loss of consortium as to Count Seven against Defendant Kings.

Additionally, the loss of consortium claims are not time barred.[15] Under Ohio law, when a person entitled to bring an action "is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by

---

[14] The parties have not addressed how or if Ohio Rev. Code § 2744 would apply to such a claim, and thus, the Court will not consider that issue here.

[15] Defendants concede that the loss of consortium claims would not be time barred if the Plaintiff-children's claims are not dismissed and immunity is not granted to a Defendant on the claim. (Doc. 23, PageId 430).

those sections, after the disability is removed."  Ohio Rev. Code § 2305.16.  "When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all."  *Id.*  Given that there is no indication that any of the Plaintiff-children are of the age of majority or have otherwise had their disability removed, the Court finds that their state law claims, as well as the derivative claims of the parents and guardians, are not time barred. *Fehrenbach v. O'Malley*, 113 Ohio St. 3d 18, 19 (2007) (holding that a parent's claim for loss of consortium against a third party for injuries to the parent's minor child is an interest that it "joint and inseparable" from the child's own claim, and thus, is tolled during the child's disability); *Loudin v. Mills*, No. C-990569, 2000 Ohio App. Lexis 2006, at *12-13 (Ohio Ct. App. May 12, 2000) (recognizing parents' claims for loss of consortium and reimbursement for incurred losses as derivative claims of their son's claims of sexual assault, which were thereby subject to the same statute of limitations and minority tolling as their son's claim, and characterizing their claims for negligent and intentional infliction of emotional distress as separate claims that were nevertheless tolled during the minority of their son).[16]

### 4.  Punitive Damages

Defendants move to dismiss the request for punitive damages because (1) Kings is not subject to punitive damages, and (2) Gasper and Bogaert are not subject to punitive damages.

---

[16] Although Defendants raise the statute-of-limitations issue only with respect to state law claims (Doc. 17, PageId 310-11),  the Sixth Circuit has applied to § 1983 the two-year statute of limitations for bodily injury or injury to personal property found in Ohio Rev. Code § 2305.10.  *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir. 1991).  Because the statute of limitations for § 1983 claims is borrowed from state law, the state's tolling provisions also are borrowed from state law, except when they are '"inconsistent with the federal policy underlying the cause of action under consideration."' *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010) (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)).  The Sixth Circuit has held that applying the Ohio tolling statute to claims arising under § 1983 is not inconsistent with statute's goal.  *Id.*  Accordingly, the § 1983 claims also are subject to tolling under the Ohio tolling provision and are therefore not time barred.

Dismissal of the demand for punitive damages, to the extent asserted against Kings or against Gasper and Bogaert in their official capacities, is appropriate.  Defendants points out that Plaintiffs may not recover punitive damages against Kings under the federal and state laws at issue here, and Plaintiffs do not argue to the contrary.  *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 (1981); *Barnes v.* Gorman, 536 U.S. 181, 189 (2002); Ohio Rev. Code § 2744.05(A).  As claims against a municipality official in his or her official capacity is the equivalent of a claim against the municipality itself, the request for punitive damages against Kings, and against Defendants Gasper and Detmer-Bogaert in their official capacities, shall be dismissed.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)); *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004).

The request for punitive damages against Defendants Gasper and Bogaert shall not be dismissed at this time, however.  In support of dismissal, Defendants rely upon the TPA, 20 U.S.C. § 6736.  The TPA provides, in pertinent part:

> Punitive damages may not be awarded against a teacher in an action brought for harm based on the act omission of a teacher acting within the scope of the teacher's employment or responsibilities to a school or governmental entity unless the claimant establishes by clear and convincing evidence that the harm was proximately caused by an act or omission of such teacher that constitutes willful or criminal misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed.

20 U.S.C. § 6736(c).[17]

As explained *supra*, Plaintiffs have alleged sufficient facts to make it plausible that Defendants acted willfully or with a conscious, flagrant indifference to the rights or safety of Plaintiffs.  Further, the use of the phrase "clear and convincing evidence" in this provision of the TPA suggests that such a determination is better reserved for a later stage of litigation after

---

[17] Under 20 U.S.C. § 6733(6), the term "teacher" is defined to include, among others, the principals, administrators, and other educational professionals who work in a school.

discovery has been completed.  Accordingly, the punitive damages claims against Defendants Gasper and Bogaert individually will not be dismissed at this stage.

IV.    <u>CONCLUSION</u>

Consistent with the foregoing, Defendants' Motion to Dismiss (Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.  It is hereby ORDERED that:

1. Count Two of the Amended Complaint alleging excessive force against H.M. in violation of the Fourth Amendment is DISMISSED in its entirety;

2. Count Seven alleging intentional infliction of emotional distress is DISMISSED as to Defendant Kings;

3. Any derivative loss of consortium claim based on Count Seven is DISMISSED as to Defendant Kings; and

4. The request for punitive damages is DISMISSED as to Defendant Kings and Defendants Gasper and Bogaert in their official capacities.

The case shall proceed on all other claims against Defendant Kings, Gasper, and Bogaert.

**IT IS SO ORDERED.**

s/Michael R. Barrett_____
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT